IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREAT AMERICAN INSURANCE    )
COMPANY OF NEW YORK,        )
                            )
        Plaintiff,          )
                            )
    vs.                     )        No. 05 C 1936
                            )
WILLIAM F. HELWIG,          )
                            )
        Defendants.         )

## MEMORANDUM OPINION AND ORDER

I.

Plaintiff, Great American Insurance ("Great American"), issued a primary comprehensive general liability policy and an excess policy to Avtec Industries, Inc. ("Avtec") covering the period between November 17, 1986 and November 17, 1987. Through a later endorsement, Land Trust 85-77 (the "Land Trust") was added as an additional insured to the primary policy.

As a beneficiary to the insured Land Trust, Defendant William Helwig ("Helwig") has sought insurance coverage from Great American in three separate litigations: 1) *People of the State of Illinois ex rel. Lisa Madigan v. Precision Enterprises, Inc. et al.*, in the Circuit Court of DuPage County, Illinois, Case No. 2003-CH-979; 2) *LeClercq v. The Lockformer Co. et al.*, in the United States District Court for the Northern District of Illinois, Case No. 00-C-7164; and 3) *Muniz v. Rexnord Corp. et al.*, in the United States

District Court for the Northern District of Illinois, Case No. 04-C-2405. All three cases seek redress for perchlorethylene ("PCE") and trichloroethylene ("TCE") pollution which allegedly emanated from the subject property of land trust.

In *Precision,* the State of Illinois brought a five-count complaint against Helwig and others. The first three counts of the complaint are brought under the Illinois EPA, 415 ILCS 5/42-43 and request that defendants provide an alternative water source, that the court enjoin future contamination, that the court assess statutory damages in accordance with 415 ILCS 5/42(a), and that defendants pay clean-up costs and other fees related to the action. The fourth count brings a claim for public nuisance and the fifth count seeks cost recovery under 415 ILCS 5/22.2(k).

*LeClercq* is a class action lawsuit arising out of alleged groundwater contamination occurring in Lisle, Illinois. The only pleading provided by the parties in this case is a fourth party complaint brought against Helwig and others. The fourth party complaint seeks contribution from Helwig under CERCLA 42 U.S.C. § 9613(f) (Count I) and also seeks contribution under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2 *et seq.* (Count II). The fourth party complaint does not provide detail as to the nature of the claims for which contribution from Helwig is sought under the Illinois Joint Tortfeasor Contribution Act.

*Muniz* is a class action that arises out of alleged water contamination in Downers Grove, Illinois. The parties have provided both the third party complaint brought against Helwig and the first party complaint. The third party complaint seeks contribution under the Illinois Joint Tortfeasor Act and Contribution under CERCLA. The first party complaint seeks recovery under CERCLA, RCRA (since dismissed), and a number of Illinois common law doctrines, including nuisance and trespass.

Great American initially denied coverage and refused to defend Helwig in the three litigations. Great American later withdrew its denial and agreed to defend Helwig under a strict reservation of rights. Great American filed this action seeking a declaratory judgment that it has no obligation to defend Helwig and/or to indemnify Helwig as a result of damages arising out of the three litigations. According to Great American, Helwig's policies do not provide coverage for these disputes because the policies' pollution exclusions operate to preclude all claims for damage caused by pollution. Helwig filed a counterclaim requesting a declaratory judgment that the primary policy imposes on Great American a duty to defend him in the three litigations. According to Helwig, under the primary policy, Great American owes a duty to defend because the underlying complaints allege conduct that falls within the personal injury coverage. Helwig alleges that the policy's pollution exclusion does not affect the personal injury

3

coverage of the policy.   I now review the parties' cross motions
for judgment on the pleadings.

## A. The Primary Policy

The primary policy originally provided coverage for liability
arising from bodily injury and property damage.      Under the
primary policy, "bodily injury" and "property damage" are defined
as follows:

> 'bodily injury' means bodily injury, sickness or disease
> sustained by any person which occurs during the policy
> period, including death at any time resulting therefrom.

> 'property damage' means (1) physical injury to or
> destruction of tangible property which occurs during the
> policy period, including the loss of use thereof at any
> time resulting therefrom, or (2) the loss of use of
> tangible property which has not been physically injured
> or destroyed provided such loss of use is caused by an
> occurrence during the policy period.

From its inception, the primary policy contained a pollution
exclusion that excluded coverage for bodily injury and property
damage resulting from pollution that was not sudden or accidental.
Specifically, the coverage did not apply:

> (f) to bodily injury or property damage arising out of
> the discharge, dispersal, release or escape of smoke,
> vapor, soot, fumes, acids, alkalis, toxic chemicals,
> liquids or gases, waste materials or other irritants,
> contaminants or pollutants into or upon land, the
> atmosphere or any water course or body of water; but this
> exclusion does not apply if such discharge, dispersal,
> release, or escape is sudden and accidental.

The policy was later amended to add coverage for personal
injury and advertising injury liability through a Broad Form

4

Comprehensive General Liability Endorsement. The relevant language
with regard to personal injury liability coverage states:

> (A) The company will pay on behalf of the insured all
> sums which the insured shall become legally obligated to
> pay as damages because of personal injury or advertising
> injury to which this insurance applies, sustained by any
> person or organization and arising out of the conduct of
> the named insured's business, within the policy
> territory, and the company shall have the right and duty
> to defend any suit against the insured seeking damages on
> account of such injury, even if any of the allegations of
> the suit are groundless, false or fraudulent, and may
> make such investigation and settlement of any claim or
> suit as it deems expedient, but the company shall not be
> obligated to pay any claim or judgment or to defend any
> suit after the applicable limit of the company's
> liability has been exhausted by payment of judgments or
> settlement.
> . . .

Personal injury is defined as:

> 'Personal Injury' means injury arising out of one or more
> of the following offenses committed during the policy
> period:
>
> (1) false arrest, detention, imprisonment, or malicious
> prosecution;
>
> (2) wrongful entry or eviction or other invasion of the
> right of private occupancy;
>
> (3) a publication or utterance
>
>> (a) of libel or slander or other defamatory or
>> disparaging material, or
>>
>> (b) in violation of an individual's right of
>> privacy;
>> . . .

This endorsement did not contain its own pollution exclusion that
would have corresponded directly to personal injury coverage.

5

The parties also executed a pollution exclusion endorsement (the "modified pollution exclusion") which replaced the pollution exclusion in the original policy. The exclusion removed coverage for sudden and accidental pollution. The modified exclusion states:

It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:

(1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) at or from premises owned, rented or occupied by the Named Insured;

(b) at or from any site or location used by or for the Named Insured or others for the handling, storage, disposal, processing, or treatment of waste;

(c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the Named Insured or any person or organization for whom the Named Insured may be legally responsible; or

(d) at or from any site or location on which the Named Insured or any contractors or subcontractors working directly or indirectly on behalf of the Named Insured are preforming operations:

(i) if the pollutants are brought on or to the site

6

or location in connection
with such operations; or

(ii) if the operations
are to test for, monitor,
clean up, remove,
contain, treat, detoxify
or neutralize the
pollutants.

(2) to any loss, cost or expense arising out
of any governmental direction or request that
the Named Insured test for, monitor, clean up,
remove, contain, treat, detoxify or neutralize
pollutants.

. . .

## B. The Excess Policy

The excess policy from its inception included coverage for 1)

personal injury; 2) property damage; and 3) advertising liability.

Personal injury was defined differently in the excess policy than

in the primary policy. In the excess policy, personal injury was

defined as:

'Personal Injury' means (1) bodily injury, sickness,
disease or disability, including death at any time
arising therefrom (2) false arrest, detention or
imprisonment, malicious prosecution, wrongful entry or
eviction (3) libel, slander, defamation of character,
humiliation, or invasion of the right of privacy, and (4)
assault and battery committed for the purpose of
protecting persons or property and (5) if arising out of
any of the foregoing, mental anguish, mental injury,
shock or fright, which occurs during the policy period.
Part (3) of this definition does not apply to occurrences
arising out of advertising activities.

The original excess policy contained a pollution exclusion that

specifically excluded personal injury and property damage caused by

pollution that was not sudden and accidental. The parties also

7

executed a subsequent pollution exclusion endorsement for the excess policy which states:

> It is agreed that Exclusion (g) is hereby deleted in its entirety and replaced by the following:
>
> (g)  1.  This policy does not apply to any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
>
>   2.  This policy does not apply to personal injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.
>   . . .

## II.

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). Under that standard, I must consider the facts in the light most favorable to the non-moving party, and only grant the motion if it is beyond doubt that he cannot plead facts sufficient to support his claim for relief. *Id.* I may only consider the pleadings and documents incorporated by reference into the pleadings. *Id.* at 1581-82. All allegations to which the parties had opportunity to respond but do not contest are taken as true. *Id.* at 1581.

The construction of an insurance policy is a question of law. *Lapham-Hickey Steel Corp. v. Protection Mutual Ins. Co.*, 166 Ill. 2d 520, 529 (1995). "Ambiguities in an insurance policy will be

8

construed in favor of the insured and against the insurer who drafted the policy." *Millers Mutual Ins. Assn. v. Graham Oil Co.*, 282 Ill. App. 3d 129, 134 (Ill. App. Ct. 1996). In particular, exclusions are to be strictly construed against the insurer and in favor of coverage. *Id.* at 137.

"[A]n insurer's duty to defend is much broader than its duty to indemnify." *Id.* at 134. In determining whether Great American owes Helwig a duty to defend, I look to the allegations of the complaints in the three litigations. *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1039 (7th Cir. 1992). "If the complaint states a claim that is within, or even potentially or arguably within, the scope of coverage provided by the policy, [Great American] must provide a defense." *Id.* Great American has a duty to defend unless it is "obvious from the face of the complaint that the allegations therein are not covered." *Id.* at 1040. Furthermore, because the complaints in question in this case state more than theory of recovery, Great American must provide a defense "if any portion of the complaint falls within the terms of its policy." *Id.*

As a preliminary matter, I must address the fact that Great American has requested a declaratory judgment as to its duty to defend and as to its duty to indemnify. The issue of indemnification would only be ripe for adjudication upon a finding of liability in each of the litigations. *See Pipefitters*, 976 F.2d

9

at 1042 ("The indemnification issue will become ripe only upon completion of the . . . litigation, for its resolution depends upon an analysis of the type of relief, if any, ultimately obtained in [the] suit."). The parties have not provided the court with any material or argument documenting that relief has been granted to Helwig in any of the three litigations at this point in the time. Therefore, I do not make a determination on the issue of indemnification in this opinion.

Turning then to the issue of Great American's duty to defend, Helwig argues Great American has a duty to defend in each of the three litigations because each complaint alleges conduct that to some extent constitutes "personal injury" under the primary policy. Helwig argues that the modified pollution exclusion by its terms only applies to the bodily injury and property damage provisions of the policy and does not affect personal injury coverage. Great American argues in response that the modified pollution exclusion is applicable to the entire policy and that personal injury coverage is excluded under either of the two prongs of the exclusion.

Neither party disputes that the original pollution exclusion and the modified pollution exclusion exclude coverage for bodily injury and property damage. Therefore, in order to determine whether there is a duty to defend the three litigations I must determine 1) if the modified pollution exclusion precludes personal

10

injury coverage under either prong; and 2) if personal injury coverage is not excluded, I must next determine if the three litigations actually allege conduct that arguably falls within the scope of the personal injury coverage of the policy triggering Great American's duty to defend.

## A. The Pollution Exclusion Endorsement

Bodily injury, property damage, and personal injury have separate and distinct definitions in the primary policy. The unambiguous language of the modified pollution exclusion limits its scope to "bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants" and does not state that personal injury coverage is affected.

Both the Seventh Circuit and Illinois courts have been presented with the question of whether a pollution exclusion that by its language only states that bodily injury and property damage coverage are excluded may also exclude personal injury coverage that is separately defined in the policy. In these cases, the courts have found that the insurers' arguments for exclusion of personal injury coverage could not override the language of the policy which did not exclude personal injury coverage. See *Pipefitters*, 976 F.2d. at 1042 (7th Cir. 1992) (holding that personal injury coverage was not excluded by the pollution exclusion endorsement in a policy where personal injury coverage

11

was added through later endorsement); *Millers Mutual* 282 Ill. App. at 137; *See also Scottish Guarantee Ins. Co. v. Dwyer*, 19 F.3d 307, 312 n.4 (7th Cir. 312). In *Millers Mutual*, the Illinois Appellate court held:

> The language of the pollution exclusion refers only to 'bodily injury' (defined as 'bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time') and 'property damage' (defined as either physical injury to tangible property, including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured). Bound as we are to construe exclusions strictly against the insurer and in favor of coverage . . . we cannot see how we can broaden the pollution exclusion's express terms to deny coverage for personal injuries caused by pollution. To adopt the construction urged by Millers Mutual would also conflate the distinction between damage sustained by property from the discharge of pollution and damage sustained by those personal rights incidental to the ownership of property.

282 Ill. App. 3d at 137.

Despite this authority, Great American attempts to distinguish the present case and presents a series of arguments as to why the modified pollution exclusion in this case should be interpreted to apply to personal injury coverage.[1] First, Great American argues that the terms of the pollution exclusion endorsement demonstrate that the exclusion modified the entire Comprehensive General

---

[1] Great American has only argued that the personal injury coverage was excluded by the modified pollution exclusion. Great American does not argue that the original exclusion should be interpreted to exclude personal injury coverage once personal injury coverage was added to the policy by the Broad Form Comprehensive General Liability Endorsement. Therefore, the court does not address this issue.

12

Liability Insurance (the "CGLI") and the exclusion therefore applies to each type of coverage in the policy, including personal injury coverage. Great American bases this argument on the following language in the endorsement:

> This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
>
> BUSINESSOWNERS POLICY
> **COMPREHENSIVE GENERAL LIABILITY INSURANCE**
> CONTRACTUAL LIABILITY INSURANCE
>
> . . .

(emphasis added). Great American argues that because the endorsement states it is modifying the CGLI, the exclusion is applicable to the entire policy.

This argument fails for two reasons. First, nothing in this language indicates, as Great American contends, that the exclusion was to apply to every type of coverage within the CGLI. It is certainly possible for the endorsement to modify the CGLI without modifying every type of coverage contained in the CGLI. At best, this argument shows an ambiguity in the endorsement and this court is bound to interpret ambiguities in favor of Helwig. *See Id.* at 137.

Second, the specific and unambiguous language of the modified pollution exclusion itself states that only bodily injury and property damage are excluded. Great American's argument fails to recognize that the personal injury coverage provision of the policy provides coverage for conduct implicating a set of rights distinct

13

and different from bodily injury and property damage. *See Id.* at 137; *Great N. Nekoosa Corp.,* 921 F. Supp. at 401, 410-11, 413. Therefore, the application of the modified exclusion to the personal injury section would have no effect on that coverage because the exclusion does not exclude coverage for the distinct set of rights that are defined as personal injury in the policy.

Great American also argues that the language found in the "Notice of Reductions and Broadenings" section of the pollution exclusion endorsement supports its contention that the exclusion applies to personal injury coverage. This section of the endorsement states in part:

Currently coverage for pollution on standard ISO policies is excluded if the introduction of the pollutants is other than 'sudden and accidental.'

By comparison, this endorsement excludes the insured's bodily injury and property damage liability arising out of pollutants introduced at or from particular locations or through certain activities whether the introduction of pollutants is 'sudden and accidental' or non-sudden and gradual. Specifically, pollution damages at or from premises owned by or rented to the Named Insured or at or from any premises used for the handling, storage, disposal, etc. of waste are totally excluded. Pollution damages are also totally excluded if they result from the transportation or handling of waste in any manner. In addition, pollution damages arising out of any operations performed by or on behalf of the insured to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants are totally excluded.

Great American argues that the fact that two of the final three sentences state that "pollution damages . . . are totally excluded" supports a broad reading of the modified exclusion to

14

exclude personal injury damages. Great American's argument is unpersuasive because it does not consider the fact that this paragraph begins by unambiguously stating "this endorsement excludes the insured's bodily injury and property damage liability . . . ." The use of the word "specifically" leading into the language that Great American relies upon indicates that these two sentences discussing total exclusion are intended to further explain the nature of the bodily injury and property damage liability that is excluded. The most logical reading of this paragraph as a whole is that bodily injury and property damage resulting from pollution are "totally excluded" from coverage. Again, at best, this language is ambiguous and must be interpreted in favor of Helwig.

Great American argues that even if personal injury damages are not excludable under the first prong of the modified pollution exclusion, the second prong, which excludes "any loss, cost or expense arising out of any governmental direction or request that the Named Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants" applies to personal injury coverage. According to Great American, the three litigations "are seeking recovery of costs from Helwig pursuant to the federal or Illinois version of CERCLA, i.e., a request for funds arising out of a governmental request or direction that Helwig clean up pollutants." While the language of this prong may

exclude various types of damages and costs from coverage in the three litigations, it is not relevant to the determination of whether *personal injury damages* are excluded. Complaints seeking damages for personal injury are brought by private parties; they do not come at government's direction or request. Furthermore, the damages sought are compensation for injury and do not arise out of attempts to monitor, clean up, remove, contain, treat, detoxify, or neutralize pollutants. Therefore, if the complaints in the three litigations allege conduct that arguably constitutes personal injury under the policy, those claims do not implicate this prong of this exclusion. For the foregoing reasons, I find that the pollution exclusion does not preclude personal injury coverage in the three litigations.

## B. Allegations of Personal Injury

Having found that personal injury coverage is not excluded under the modified pollution exclusion, I must next determine if the complaints in the three litigations allege conduct that constitutes personal injury and triggers Great American's duty to defend. The policy states:

'Personal Injury' means injury arising out of one or more of the following offenses committed during the policy period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

16

(3) a publication or utterance

> (a) of libel or slander or other defamatory or disparaging material, or

> (b) in violation of an individual's right of privacy

Helwig argues that the each of the three complaints in part alleges conduct that falls under subparagraph (2) of the definition as a "wrongful entry or eviction or other invasion of the right of private occupancy."

Illinois law recognizes that an alleged violation of the personal rights incidental to ownership of property (e.g. trespass, nuisance, or other interference with possession) arguably falls within the definition of "wrongful entry or eviction or other invasion of the right of private occupancy." *Illinois Tool Works v. The Home Indemnity Corp.*, 998 F. Supp. 868, 872 (N.D. Ill. 1998) (claims for trespass and nuisance arising from pollution trigger personal injury coverage as a "wrongful entry") ("the personal injury section of the policy would include 'damage sustained by those personal rights incidental to the ownership of property' arising from the discharge of pollution.") (quoting *Millers Mutual*, 282 Ill. App. 3d at 137); *Millers* Mutual, 282 Ill. App. at 140 (claims for nuisance and trespass trigger personal injury coverage as a "wrongful entry"); *Pipefitters*, 976 F.2d at 1040 (finding that alleged negligence resulting in the imposition of a reclamation lien and a seal order on property alleged personal injury as an

"invasion of the right to private occupancy") *Scottish Guarantee*, ~~19 F.3d at 312 (allegations of negligent trespass trigger personal~~ injury coverage as "wrongful entry"). Even if the complaint alleges other forms of injury and damage caused by pollution that is otherwise excluded under the modified pollution exclusion, the insurer is still obligated to defend the entire lawsuit. *See Pipefitters*, 976 F.2d at 1037 (finding a duty to defend an entire lawsuit which included claims under federal and state environmental law, and common law claims).

The complaints in each of the three litigations must be examined in order to determine whether they contain allegations that are at least arguably constitute a "wrongful entry or eviction or other invasion of the right of private occupancy."

In *Muniz*, Count III of the original complaint is for nuisance and alleges that "failure to address such contamination constitutes an unreasonable, unwarranted and unlawful use of the properties and substantially interferes with Plaintiffs' and the Class' reasonable use, development and enjoyment of their properties." Count IV of the original complaint is for trespass and alleges that "as a result of defendants' wrongful trespass, the lawful rights of Plaintiffs and the Class to use and enjoy their properties have been substantially interfered with . . . ." The third party complaint seeks contribution under the Illinois Joint Tortfeasor Contribution Act for these injuries. These allegations of

18

nuisance and trespass can be characterized as a "wrongful entry or eviction or other invasion of the right of private occupancy" under Illinois law. Therefore, Great American has a duty to defend Helwig in this case.

The *Precision* action states claims under Illinois environmental statutes as well a claim for public nuisance. The only language in the complaint that Helwig points to in support of a duty to defend are allegations that TCE and PCE contaminated a local water supply. Nothing in the complaint, however, could arguably be characterized as stating a claim or requesting relief for personal injury damage as a result of "wrongful entry or eviction or other invasion of the right of private occupancy." The action is brought by the State of Illinois and does not seek compensation for violation of any rights of private occupancy. Therefore, Great American does not have a duty to defend this action. To hold otherwise would expand personal injury coverage to include other types of damage/injury that are clearly excluded under the modified pollution exclusion and would eviscerate the meaning of the other provisions of the policy. *See Great N. Nekoosa Corp.,* 921 F. Supp. at 410-11, 413.

Turning to the *LeClercq* action, I find that the third party complaint with which I have been provided is insufficient to make a determination as to whether the allegations in that case trigger the duty to defend. The third party complaint indicates that the

19

third party plaintiff is seeking contribution under the Illinois Joint Tortfeasor Act from Helwig. The third party complaint does not, however, explain the specific conduct or claims for which contribution from Helwig is sought. Based solely upon the third party complaint, I cannot determine if this action alleges a "wrongful entry or eviction or other invasion of the right of private occupancy" against Helwig. The parties must produce the relevant complaint in that case before a determination can be made.

It is Great American's position that a failure to apply the pollution exclusion to all coverage in this case will expose it to the "yawning expanse of liability" that pollution exclusions were designed to protect against. *See generally American States Ins. Co. v. Koloms*, 177 Ill. 2d 473 (Ill. 1997). The implication is that Great American will be forced to indemnify the entire action. This is not the case. The court's finding that Great American has a duty to defend arising out of those claims that allege personal injury does not expose Great American to any liability for damages or costs sought in those suits beyond those which are properly characterized as personal injury.

## D. The Excess Policy

Unlike the primary policy, the language of the pollution exclusion in the excess policy unambiguously excludes damages for personal injury. Helwig does not contest that Great American does not have a duty defend him under the excess policy. Accordingly,

20

I grant Great American's motion for judgment that there is no duty to defend arising out of the excess policy.

<u>Conclusion</u>

Great American has a duty to defend in the *Muniz* action and does not have a duty to defend in the *Precision* action. The parties shall produce the relevant complaint in the *LeClercq* case so that I may make a determination as to Great American's duty to defend in that case. The parties have not demonstrated that the issue of indemnification is ripe for adjudication and I therefore do not rule on the issue of indemnification.

Helwig's motion for judgment on the pleadings is granted in part and denied in part. Great American's motion for judgment on the pleadings in granted in part and denied in part.

**ENTER ORDER:**

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

DATED:   March 9, 2006